**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1712
_____


JOSEPH P. LASALA;
FRED S. ZEIDMAN,
as Co-Trustees of the Aremissoft Corporation Liquidating Trust,

Appellants


v.


MARFIN POPULAR BANK PUBLIC COMPANY, LTD.
_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:09-cv-00968)
District Judge:  Hon. Joel A. Pisano

Argued:  November 15, 2010

Before:  BARRY, CHAGARES, and VANASKIE, <u>Circuit</u> <u>Judges</u>.

(Filed: January 7, 2011)

Hal M. Hirsch, Esq.
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932

Gary R. Greenberg, Esq.
Louis J. Scerra, Jr., Esq. (Argued)
Greenberg Traurig, LLP
One International Plaza
Boston, Massachusetts 02110

Counsel for Appellants

Todd S. Fishman, Esq. (Argued)
Reginald B. Schafer, Esq.
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Counsel for Appellee

_____

OPINION
_____

CHAGARES, Circuit Judge.

Joseph LaSala and Fred Zeidman appeal from the dismissal of their case by the

United States District Court for the District of New Jersey. For the reasons set forth

below, we will affirm the dismissal for lack of personal jurisdiction.

I.

Because we write solely for the benefit of the parties, we will only briefly recite

the facts. LaSala and Zeidman ("the Trustees") are co-trustees of the AremisSoft

Corporation Liquidating Trust. AremisSoft was a company that purported to sell

computer software technology, and which was involved in a massive international fraud

and money laundering scheme perpetrated by Lycourgos Kyprianou, the founder and

one-time CEO of the company, and Roys Poyiadjis, the CEO of AremisSoft at the time

that the fraud was discovered. This litigation centers around Kyprianou's use of bank

accounts at Marfin Popular Bank ("Laiki") between 1999 and 2002. The Trustees

contend that Laiki breached its fiduciary duties in allowing Kyprianou "to transfer funds

2

for purposes which it knew or had reason to know were unrelated to any legitimate business activities of AremisSoft." Appellants' Br. at 8.

AremisSoft existed as a corporation from 1998 through 2001, and was incorporated in Delaware, had its principal place of business in New Jersey, and conducted business operations in the United States, Cyprus, the United Kingdom, India, and Eastern Europe. Laiki is one of the largest banks in Cyprus, is registered in Cyrpus, and is regulated by the Central Bank of Cyprus. It maintains branches in Cyprus, Greece, the United Kingdom, Australia, Romania, Serbia, Estonia, Guernsey, Ukraine, Malta, and Russia. Laiki does not currently have any branches or offices in the United States, but it did maintain a "representative office" in New York City from 1992 until March of 2008.

The Trustees filed suit in the District of New Jersey on March 4, 2009, seeking relief for Laiki's alleged aiding and abetting breaches of fiduciary duty, civil conspiracy, and breach of contract. On June 10, 2009, Laiki filed a motion to dismiss, requesting dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), the doctrine of forum non conveniens, and due to the running of the statute of limitations. The District Court granted Laiki's motion, determining that it lacked personal jurisdiction over Laiki. In the instant appeal, the Trustees challenge the standard used by the District Court in granting the motion to dismiss, the District Court's determination that it lacked personal jurisdiction, the District Court's refusal to consider whether the New Jersey Supreme Court would recognize a "conspiracy theory" of personal jurisdiction, and the District Court's denial of LaSala's request for jurisdictional discovery.

3

II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's dismissal for lack of personal jurisdiction, D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 101 (3d Cir. 2009), but review decisions of whether to allow discovery for abuse of discretion. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003).

III.

The Trustees first argue that the District Court erred in requiring them to demonstrate the existence of personal jurisdiction by a preponderance of the evidence. A prima facie standard, under which the plaintiff's allegations are presumed true and all factual disputes are resolved in the plaintiff's favor, applies in situations where the District Court does not hold an evidentiary hearing prior to determining the existence of personal jurisdiction. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007). Even if the plaintiff meets this prima facie standard, however, the ultimate burden remains on the plaintiff to demonstrate the existence of jurisdiction by a preponderance of the evidence. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).

In addressing the standard applied to motions to dismiss for lack of personal jurisdiction, the District Court wrote as follows:

> The burden of establishing personal jurisdiction lies with the plaintiff. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Plaintiff must show that jurisdiction exists by a preponderance of the evidence. Id. The Court must accept all of Plaintiffs' allegations as true and construe disputed facts in Plaintiffs' favor. Id. at 142 n.1.

4

Joint Appendix ("J.A.") at 8. This properly sets forth the applicable standard on a motion to dismiss for lack of personal jurisdiction, and we find no error in the District Court's application of this standard to the facts of this case. The standard applied to the motion to dismiss, therefore, does not provide grounds to reverse the District Court's decision.

The Trustees next contend that the District Court erred in refusing to find the existence of personal jurisdiction based upon a purposeful availment theory, the "effects test" articulated by Calder v. Jones, 465 U.S. 783 (1984), a conspiracy theory of jurisdiction,[1] or the existence of general jurisdiction. These contentions all fail, however, based upon a complete lack of facts that would give rise to jurisdiction.

In regard to the purposeful availment theory, the Trustees point to no facts indicating that Laiki directed any conduct toward New Jersey or undertook any continuing obligations with relation to a New Jersey party. This is true despite the fact that Laiki was involved in a banking relationship with a New Jersey corporation. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985) (stating that the existence of a contractual relationship with a forum-based party is insufficient to establish personal jurisdiction automatically, and requiring that courts consider, instead, factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing"). Although the Trustees assert that Laiki was aware that AremisSoft was a New Jersey resident, they provide no further

---

[1] As discussed below, we do not believe that a conspiracy theory of jurisdiction was available to the Trustees as a matter of law, and we, therefore, will not address the sufficiency of their allegations in relation to this theory of personal jurisdiction.

allegations regarding what obligations were undertaken as part of the banking relationship, where these obligations were negotiated, or where they were to be performed. The District Court did not err in determining that the Trustees had not established a prima facie case of personal jurisdiction based upon a purposeful availment theory.

The Trustees similarly failed to allege facts that were sufficient to establish a framework for jurisdiction based upon the Calder effects test. In order to maintain such a claim, the plaintiff must show that "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum . . . ; [and] (3) The defendant expressly aimed his tortious conduct at the forum." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998). The Trustees assert that the "expressly aimed" criterion is satisfied in this case because Laiki "knew, given its banking relationship with AremisSoft, that its money laundering and conspiratorial activities on behalf of Poyadjis [sic] and Kyprianou would create an actionable event in New Jersey where the brunt of harm was suffered." Appellants' Br. at 40. Such an argument is foreclosed by this Court's decision in Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007), which states that the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under Calder. In the absence of "specific facts showing a deliberate targeting of [the forum]," Marten, 499 F.3d at 298, the District Court properly refused to premise personal jurisdiction upon the effects test.

The Trustees' general jurisdiction claim has even fewer supporting factual allegations than those discussed above. The Trustees' only allegations of contacts

6

between Laiki and New Jersey are that Laiki maintained a bank account for a New Jersey corporation and that Laiki accepted stock in a New Jersey corporation as collateral for a loan. Neither of these provides the type of "continuous and systematic" contacts with the forum that are required to maintain general jurisdiction. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000). Given this discussion, we will affirm the District Court's conclusion that the Trustees have not established a prima facie case of personal jurisdiction.

The Trustees also argue that the District Court improperly limited its consideration of personal jurisdiction to the contents of the complaint, and failed to consider the additional submissions that were made to the court for purposes of establishing personal jurisdiction. This assertion is entirely without merit. First, the fact that the District Court even considered theories of purposeful availment and general jurisdiction demonstrates that the District Court looked more broadly than the four corners of the complaint, as these jurisdictional theories were not raised until the response to Laiki's motion to dismiss. In addition, the fact that the District Court did not believe that certain allegations were as significant as the Trustees believed them to be does not demonstrate that the District Court refused to consider these portions of the Trustees' submissions. We see no evidence that the District Court improperly limited the scope of its consideration of personal jurisdiction, and will decline to reverse its decision on such a ground.

The fourth ground for reversal suggested by the Trustees is the District Court's consideration of their claim of conspiracy jurisdiction. The availability of the conspiracy

7

theory of jurisdiction, under which the in-forum acts of co-conspirators can be attributed to an out-of-forum defendant in certain circumstances, is a question of state law. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 102 n.8 (3d Cir. 2004). In its decision, the District Court declined to adopt a conspiracy theory of jurisdiction in the absence of an affirmative decision to do so by the New Jersey Supreme Court. Although the District Court erred in refusing to use a conspiracy theory of jurisdiction simply because the New Jersey Supreme Court had not yet decided the issue, see Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 45-46 (3d Cir. 2009) ("In the absence of a controlling decision by the [forum state's] Supreme Court, a federal court applying that state's substantive law must predict how [the forum state's] highest court would decide this case."), this error was harmless, as we predict the New Jersey Supreme Court would decline to adopt such a theory of personal jurisdiction. In Waste Management, Inc. v. Admiral Ins. Co., 649 A.2d 379, 389 (N.J. 1994), the New Jersey Supreme Court stated that "jurisdiction over one defendant may not be based on the activities of another defendant . . . . The requirements of minimum contacts analysis 'must be met as to each defendant over whom a state court exercises jurisdiction.'" (quoting Rush v. Savchuk, 444 U.S. 320, 332 (1980)). A conspiracy theory of jurisdiction essentially would require basing jurisdiction over Laiki on Kyprianou's and Poyiadjis's actions in New Jersey. Given its statements in Waste Management, it cannot be said that the New Jersey Supreme Court would be likely to adopt this theory of jurisdiction, and the District Court's refusal to do so does not provide grounds for reversing its decision.

8

The Trustees' last two grounds for reversal involve the District Court's refusal to grant discovery, first into the issue of the existence of jurisdiction and, second, into the possibility of spoliation. As a general rule, jurisdictional discovery is allowed unless the claim of jurisdiction is "clearly frivolous." Toys "R" Us, 318 F.3d at 456. In order to demonstrate that the claim is not clearly frivolous, the plaintiff must "present[] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." Id. (internal quotations omitted). Most recently, this Court has cautioned against allowing jurisdictional discovery to serve as "a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." Eurofins Pharma US Holdings v. BioAlliance Pharma SA, --- F.3d ----, No. 09-3790, 2010 WL 3960583, at *6 (3d Cir. Oct. 12, 2010). After reviewing the record and questioning the Trustees during oral argument on what contacts already had been or were likely to be discovered, we do not believe that the Trustees' request can be described as anything other than a fishing expedition. For this reason, we will affirm the District Court's decision to deny jurisdictional discovery.

Finally, the Trustees appear to argue that limited discovery into the issue of spoliation should be allowed even in the absence of a finding of personal jurisdiction, as one of the sanctions that may be imposed for spoliation is the inference that destroyed evidence would have been favorable to the opposing party. E.g., Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994). Spoliation does not provide an independent ground for jurisdiction or for conducting discovery. Although a spoliation inference may help a party establish jurisdiction, it would be inappropriate to conduct

9

discovery into the issue of spoliation after determining that jurisdiction does not exist and that jurisdictional discovery is unnecessary. Further, any allegations of spoliation in this case are speculative and conclusory. For these reasons, the District Court also did not abuse its discretion in refusing to grant discovery into the issue of spoliation.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.